W.Q. GLASS, Jr. and Love Farms, Inc., a Missouri corporation, Plaintiff,

v.

FEDERAL CROP INSURANCE CORPORATION, a corporation, Defendant.

No. S83–0311C.

United States District Court, E.D. Missouri, Southeastern Division.

August 19, 1986.

Phillip J. Barkett, Jr., Dempster, Fuchs, Barkett & Pruett, Sikeston, Mo., for plaintiff.

Thomas E. Dittmeier, U.S. Atty. by Henry J. Fredericks, Asst. U.S. Atty., St. Louis, Mo., for defendant.

MEMORANDUM

WANGELIN, District Judge.

This matter is before the Court for a decision on the merits following a one-day trial on June 10, 1986.

After consideration of the testimony adduced at trial, the exhibits introduced into evidence, the briefs of the parties, and the applicable law, the Court hereby makes the following findings of fact and conclusions of law. Any finding of fact equally applicable as a conclusion of law is hereby adopted as such, and any conclusion of law equally applicable as a finding of fact is hereby adopted as such.

## FINDINGS OF FACT

1. Plaintiff W.Q. Glass, Jr. is a citizen and resident of the State of Tennessee. However, at all times relevant to the issues in this matter, plaintiff W.Q. Glass, Jr. was a citizen and resident of Mississippi County, Missouri. Plaintiff Love Farms, Inc. is a corporation organized and existing under the laws of the State of Missouri with its principal place of business in Mississippi County, Missouri. Both parties plaintiff were, at all times relevant to the issues herein, engaged in the business of farming.

2. The Federal Crop Insurance Corporation is a body corporate of the Department of Agriculture with its principal office located in the District of Columbia and existing pursuant to the laws and statutes of the United States of America. *7 U.S.C. Section 1501, et seq.*

3. In 1978 Glass and Love Farms, Inc. applied for and were issued crop insurance policies for corn and wheat on land located in Mississippi County, Missouri. These applications were accepted by defendant. Contract No. 29–133–00358 relates to W.Q. Glass, Jr., and Contract No. 29–133–00357 relates to Love Farms, Inc.

4. Crop insurance contracts with F.C.I.C. are continuous contracts which remain in full force and effect for each succeeding crop year unless terminated for non-payment of the premium due, or cancelled by either party.

5. Plaintiffs Glass and Love Farms had wheat crop insurance for the crop years of 1979, 1980, and 1981.

6. For wheat crop insurance with F.C.I.C. for the crop year of 1982, the premium amount due F.C.I.C. on the 1981 crop year insurance must have been paid on or before the termination date for indebtedness on October 10, 1981.

7. Plaintiffs Glass and Love Farms failed and refused to pay the insurance premium due F.C.I.C. for the 1981 crop year on or before the termination date for indebtedness on October 10, 1981.

8. Although not required to by the policy, F.C.I.C. notified plaintiffs by letter dated December 22, 1981 that the policies and contracts of insurance they had with F.C.I.C. were terminated for non-payment of the premium due F.C.I.C. on October 10, 1981, and that the premium for the past crop year (1981) was still due and owing.

9. The check issued by William Q. Glass, Jr. in the amount of $3,080.77, dated December 23, 1981, plaintiff's exhibit 21, was in payment of the debt due F.C.I.C. for the premium covering the crop year of 1981. However, after October 10, 1981, a nine per-cent service charge accrued against the debt of $3,080.77; and on December 23, 1981, $3,080.77 was not sufficient to cover the debt owed F.C.I.C. by plaintiffs Glass and Love Farms.

10. The 1981 wheat premium for plaintiff W.Q. Glass, Jr. was $2,327.43. It was increased by the nine per-cent service fee of $209.47 (TR.107). The $3,080.77 was applied to this indebtedness of $2,536.90 on January 11, 1982. The credit balance remaining of $543.87 was refunded to W.Q. Glass, Jr. in May of 1982 (TR.108). The indebtedness of Love Farms, Inc. of $753.34 was increased by the nine per-cent service fee of $67.80; and this total of $821.14 was paid to F.C.I.C. on January 12, 1983 (TR.109).

11. After the termination of the policies of insurance on October 10, 1981 for non-payment, neither plaintiff W.Q. Glass, Jr. or Love Farms, Inc. had insurance coverage with F.C.I.C. for the crop year of 1982 or thereafter. The receiving of payment for the debt due, i.e., $3,080.77, less a refund of $543.87 on the W.Q. Glass, Jr. farm on December 23, 1981; and the $821.14 on the Love Farms, Inc. on January 12, 1983,

did not reinstate the insurance policies to either W.Q. Glass, Jr. or Love Farms, Inc.

12. The contracts and policies of insurance that were terminated on October 10, 1981 determined the conditions by which the policies were in effect and the rights and benefits of the parties. Neither W.Q. Glass, Jr. or Love Farms, Inc. were entitled to any rights or benefits not granted by the contracts and policies of insurance.

13. The policies of insurance provided a closing deadline for insurance coverage for the 1983 wheat crop year in Mississippi County, Missouri, which was September 30, 1982. W.Q. Glass, Jr. was eligible for insurance coverage on his wheat crop for the crop year of 1983 upon declaring and applying for coverage on or before September 30, 1982. This he failed to do. Love Farms, Inc., upon payment of its debt for the 1981 wheat crop (which was not paid until January 12, 1983), was eligible for insurance coverage on its wheat crop for the crop year of 1983 upon declaring and applying for coverage on or before September 30, 1982. This it failed to do.

14. Plaintiffs W.Q. Glass, Jr. and Love Farms, Inc. did not have wheat crop insurance with F.C.I.C. for the crop year of 1983; and neither plaintiff is entitled to recover any benefits from F.C.I.C. for the crop loss of 1983.

## CONCLUSIONS OF LAW

The plaintiffs, W.Q. Glass, Jr. and Love Farms, Inc., a Missouri corporation, filed this action on December 9, 1983 seeking judgment against defendant Federal Crop Insurance Corporation, a corporation, for money damages, money penalty, and attorney's fees. Plaintiffs' claims arise out of insurance policies which plaintiffs allege were in full force and effect at the time of the alleged damages, which the defendant denies.

This Court has jurisdiction over this matter pursuant to 7 U.S.C. § 1508(c). Venue is proper in the Eastern District of Missouri, Southeastern Division. The regulations governing F.C.I.C. for wheat crop insurance coverage are found at 7 C.F.R. § 418.1 *et. seq.* These regulations must be followed in obtaining crop insurance with F.C.I.C.

Crop insurance contracts such as those before the Court in this matter are somewhat different than the policies individuals purchase for home, auto, or health coverage. Individuals who hold crop insurance contracts pay for their coverage after the growing season is over for the crop which is insured. This coverage for a crop which grows in the spring and summer would be paid for in the fall after the crop is harvested. Moreover, crop insurance contracts with F.C.I.C. are continuous contracts which remain in full force and effect for each succeeding crop year unless terminated for non-payment of the premium due and owing on the termination date as set out in the policy, or by cancellation of the policies by either party.

In the instant case, plaintiffs had planted an insured crop in 1981. Upon harvest, plaintiffs were then obligated to pay a premium for the coverage they enjoyed during the 1981 crop year. The terms of the contract with F.C.I.C. stated, and all parties agree, that the termination date for the 1981 crop year was October 10, 1981. Plaintiffs concede that the premiums were not paid by the termination date. (TR.9).

Plaintiffs subsequently were notified that the policies were terminated and that plaintiffs still owed the premium for 1981. Plaintiffs later paid the premiums due and now contend that because F.C.I.C. accepted payment that the termination was waived and that the policies were back in effect for succeeding crop years. The Court disagrees.

Plaintiffs' policies automatically terminated as of October 10, 1981; and the only way for plaintiffs to acquire coverage was to pay their outstanding premiums *and* reapply for coverage. Plaintiffs paid the owing premiums which would have been due whether plaintiffs continued farming or never planted another seed. However, plaintiffs never notified F.C.I.C. of their intention to plant another insurable crop. F.C.I.C. cannot be required to pay out claims on policies which were terminated and never reinstated.

Even if plaintiffs' late payments had the effect of continuing the policies to cover succeeding crop years, plaintiffs still would not prevail. Plaintiffs' 1982 crop did not qualify for coverage. Plaintiffs failed to file an acreage report for the crop year 1982 showing zero acreage as required by the policies. This failure also would serve to terminate the policies.

Finally, plaintiffs did not declare or apply for coverage for the 1983 crop year by September 30, 1982 as required by F.C.I.C. Had plaintiffs done so, they would have had coverage. Instead, plaintiffs boldly planted a crop with no assurance of coverage; and when the crop was lost, they demanded F.C.I.C. pay on their claim. F.C.I.C. cannot guess when and where farmers are going to plant a crop and then be expected to pay on claims for crops which are lost. There are clear and concise dates by which plaintiffs knew or should have known that they had to take affirmative action in order to continue their coverage. Plaintiffs failed to act in accordance with the terms of the contracts and cannot prevail in this matter.